IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN HOLMES and | ) | |
| PAULETTE HOLMES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 3:20-cv-853-ECM |
| | ) | (WO) |
| FRESENIUS KIDNEY CARE | ) | |
| OF TUSKEGEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDOM OPINION AND ORDER**

## I.    INTRODUCTION

The pending motions to amend/correct complaint, (doc. 14), and to remand, (doc. 15), require this Court to determine whether it has diversity jurisdiction over this case.[1]  In defense of subject matter jurisdiction,  Bio-Medical Applications of Alabama, Inc. d/b/a Fresenius Kidney Care ("BMA") notes, "[t]he removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand and with the other give plaintiffs a bag of tricks to overcome it." (Doc. 17 at 9) (citing *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005)).  But before a defendant can accuse the plaintiff of deploying its "bag of tricks" to divest the court of federal jurisdiction, the prerequisites for diversity subject matter jurisdiction must have existed at the time of removal.  BMA and

---

[1] Also pending before the Court are the Defendants' motion for guidance from the court, (doc. 26), and the Plaintiffs' motion for entry of a scheduling order, (doc. 27).  For the following reasons, they are both denied as moot.

Shirley Blevins Carrington (collectively "Defendants") argue that Steven and Paulette Holmes ("Plaintiffs") fraudulently joined a non-diverse defendant and are now attempting to destroy diversity by amending their complaint.  True as this might be, the Defendants' focus on complete diversity between the parties neglects the other requirement for diversity jurisdiction—the satisfaction of the $75,000 amount in controversy requirement.  For the following reasons, the Plaintiffs' motion to amend/correct Complaint, (doc. 14), is due to be DENIED, and the motion to remand, (doc. 15), is due to be GRANTED.

## II.      STANDARD OF REVIEW

Pursuant to § 1332, federal courts "shall have jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 USCA § 1332(a)(1).  Nevertheless, federal courts are courts of limited jurisdiction and therefore possess only the power authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Courts should presume that a case lies outside of this limited jurisdiction, and the burden of establishing the contrary should be upon the party asserting jurisdiction. *Id.*  Although a defendant has the statutory right to remove in certain situations, the plaintiff is still the master of his claim. *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994).  For that reason, the defendant's right to remove and the plaintiff's right to choose his forum are "not on equal footing." *Id.* Accordingly, the defendant's removal burden is a heavy one. *Id.*

### III.   PROCEDURAL HISTORY AND FACTS

On March 1, 2019, Steven Holmes arrived at the Fresenius Kidney Care Dialysis Clinic in Tuskegee, Alabama. (Doc. 1-1 at 2). Holmes was in a wheelchair, and employees of the clinic attempted to help him out of the chair. Holmes fell and was seriously injured. He was taken to the East Alabama Medical Center and was later admitted to Jackson Hospital in Montgomery. He sustained "back injuries and other injuries." (*Id*.).

On September 15, 2020, Holmes and his wife Paulette Holmes filed a suit for negligence and wantoness in the Circuit Court of Macon County, Alabama. In the complaint ("operative complaint"), they named Fresenius Kidney Care of Tuskegee, Shirley Blevins Carrington, and seven unnamed defendants who are "residents of the State of Alabama who attempted to seat Steven Holmes in a dialysis chair . . . but who negligently and/or wantonly allowed him to fall, injuring himself . . . ." (*Id.* at 1). They sought compensatory and punitive damages. (*Id*. at 3).

On October 21, 2020, BMA, a non-resident corporation,[2] with the consent of Carrington removed the case to federal court based on federal diversity jurisdiction. (Doc. 1 at 1–3). In their notice of removal, in addition to the existence of the requisite amount in controversy, the Defendants argued complete diversity existed because Carrington, an Alabama resident, had been fraudulently joined to destroy complete diversity. (*Id*. at 3–4).

On November 20, 2020, the Plaintiffs filed two motions: a motion to amend/correct the complaint, (doc. 14), and a motion to remand the case back to state court, (doc. 15). In

---

[2] Defendant BMA is a Delaware corporation with its principle place of business in Massachusetts. (Doc. 1 at 3).

their motion to amend, the Plaintiffs argued that they were entitled to amend their complaint to "[c]orrect the description of the type of negligence of Shirley Blevins Carrington" and "[s]ubstitute for Fictitious Defendant A . . . Sondra Doe." (Doc. 14 at 2). They argued, therefore, the Court should remand the case back to state court because complete diversity does not exist. (Doc. 15).

## IV.   DISCUSSION

For this Court to have jurisdiction over this case, it must determine whether the Defendants have cleared three hurdles.  First, Defendants must show the Plaintiffs should not be able to amend their complaint.   Second, Defendants must show that Shirley Carrington was fraudulently joined.  And finally, they must show the requisite amount in controversy exists.  If the Plaintiffs prevail at any of these junctures then the case must be remanded back to state court.  This Court will begin at the first hurdle in the path to federal diversity jurisdiction: whether the Plaintiffs may amend their complaint.

### A. Amending Complaint

The Plaintiffs argue that they should be allowed to amend their complaint to clarify the cause action against Carrington and to substitute "Sondra Doe" as one of its fictitious defendants.  They argue that the Court should allow them to do so because other courts in this Circuit have found that denying a motion to amend to correct the name of a non-diverse party after removal was an abuse of discretion. (Doc. 14 at 4–6) (citing *Dever v. Family Dollar Stores of Ga., LLC*, 755 F. App'x 866, 869–70 (11th Cir. 2018)).

In response, the Defendants argue that the proposed amended complaint is categorically different from the operative complaint, and the new and completely different

theories against Carrington are solely for the purpose of avoiding federal jurisdiction. (Doc. 17 at 6).

In most cases, courts "should freely give leave [to amend a complaint] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). But when a plaintiff tries to amend the pleadings to add additional defendants after removal, courts are afforded more discretion. "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C.A. § 1447(e). The removal statute has been interpreted to mean that courts should more closely scrutinize "an amended pleading that would name a new nondiverse defendant in a removed case." *Dever v. Fam. Dollar Stores of Georgia, LLC*, 755 F. App'x 866, 869 (11th Cir. 2018). Specifically, "district courts should also balance the defendant's interests in maintaining the federal forum." *Id*. The Eleventh Circuit has not explicitly spoken on how "a district court should decide whether to permit or deny joinder of a nondiverse defendant after removal." *Id.* Instead, in an unpublished opinion, the Eleventh Circuit considered factors such as "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether [the] plaintiff has been dilatory in asking for amendment, whether [the] plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities" in determining whether to allow joinder. *Dever*, 755 F. App'x at 869 (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). The district court has broad discretion in weighing these factors. *Id*.

The cases where courts found that post-removal amendments were permissible have in common that the amendments were discrete changes that either resulted from the

discovery of a party's identity or corrected an error in the pleadings.  For example, in *Dever*, the Circuit panel found the district court abused its discretion when it denied the motion to amend when the plaintiff had mistaken the identity of a store manager and desired to substitute the name of the correct individual. *Id*. at 869–70.  The Circuit found it particularly persuasive that the plaintiff made clear in her original complaint that she sought to bring a claim against the store manager and only amended the complaint to correct the name. *Id*. at 870.  Similarly, in *Quattlebaum v. Fed. Express Corp.*, 2019 WL 2518337,  at *2 (M.D. Ala. June 18, 2019), the court allowed the substitution of the actual names of specific managers for the fictitious defendants described as those "who were 'responsible for maintaining the door in a safe, operable condition,' and who 'failed to use reasonable care in repairing the door causing [it] to be in a dangerous condition.'" *See also Bedynerman v. Target Corp.*, 2019 WL 6907695, at *1 (M.D. Fla. Dec. 19, 2019) (allowing amended complaint to substitute store manager's name for John Doe defendant once manager's identity was disclosed by Target).

Similarly, courts have allowed post-removal motions to amend when the plaintiffs merely "sought to *clarify* [existing] claims against an existing defendant." *Landrum v. Delta Int'l Mach. Corp.*, 2008 WL 2326324, at * 4 (M.D. Ala. June 3, 2008)  (emphasis added) (allowing plaintiff to amend complaint to correct the date of the accident and the resident defendant's form of business entity); *see also Davis ex rel. Estate of Davis v. Gen. Motors Corp.*, 353 F.Supp.2d 1203, 1207–08 (M.D. Ala. 2005) (allowing plaintiff to amend complaint against named resident defendant where plaintiff had intended to, but "simply omitted [stating the claim and factual basis for the claim] from the Complaint in

error"). In contrast, a motion to amend the complaint was denied when it neither clarified an existing claim or drafting error but instead inserted an entirely new theory against the defendant. *Henderson v. Goodyear Dunlop Tires N. Am., Ltd.*, 2011 WL 3503171, at *5 (M.D. Ala. Aug. 10, 2011). In *Henderson*, the Court noted that the plaintiff's asserting a "new theory of recovery appears to be intended to defeat diversity jurisdiction." *Id*. at *5 n.2.

Here, the Plaintiffs' amended complaint runs afoul of both of these permissible means for amendment of the complaint at the post-removal stage. The Plaintiffs argue that their amended complaint "[c]orrect[s] the description of the type of negligence of Shirley Blevins Carrington . . ." and "[s]ubstitute[s] for Fictitious Defendant A, the Alabama resident non-diverse defendant, Sondra Doe." (Doc. 14 at 2). The Plaintiffs explain that they simply had wrong information about Carrington's "specific role in the transfer of plaintiff from a wheelchair to a dialysis bed and hence misalleged her role in the accident and her specific negligence." (*Id*. at 9.) These reasons do not align this case with those in which plaintiffs were permitted to amend their complaints post-removal.

First, the Plaintiffs' amended complaint does far more than simply "correct the description of the type of negligence"—the amended complaint bears little resemblance to the operative complaint. The operative complaint had one count of negligence and wantoness against Fresenius and Carrington for allowing Holmes to fall. (Doc. 1-1 at 2). The proposed amended complaint contains a total of three counts ("Negligent or Wanton Breach of Non-Delegable Duty" and two counts of "Negligent and Wanton Breach of Duty of Care") and includes a previously unidentified negligence theory based on clinic staff's

summoning the local fire department to assist Holmes. (Doc. 14-1 at 6–7).  The new complaint is replete with the details about the incident compared to the factually sparse operative complaint.  This is not a case of the Plaintiffs trying to clarify existing claims against the Defendants—the Plaintiffs are not changing a date or the Defendants' form of business. *See Landrum*, 2008 WL 2326324 at *4.  Nor is it a case wherein the Plaintiffs intended to include a claim but omitted the claim in error. *See Davis ex rel. Estate of Davis*, 353 F.Supp.2d at 1207–08.  Instead, it is a wholesale rewriting of the complaint to advance novel legal theories and supporting facts for those theories that were not pled in the initial complaint.

Further, the Plaintiffs' attempt to add a non-diverse defendant as one of its fictitious defendants fails because it is not, as a technical matter, joining a new party.  Substituting fictitious "Sondra Doe," "a heavy set woman of African-American descent who is approximately 50 years of age and who on March 1, 2019, was employed . . . at Bio-Med's Tuskegee clinic", (doc. 14-1 at 2), for "Fictitious Defendant A" does provide more detail on her identity.  However, the new description is still not sufficiently definite enough to allow such an amendment at the post-removal stage.  The Eleventh Circuit has recognized that courts may consider fictitious defendants for diversity jurisdiction if the "description of the defendant is so specific as to make the fictitious name, 'at the very worst, surplusage.'" *Smith v. Comcast Corp.,* 786 F. App'x 935, 939 (11th Cir. 2019) (quoting *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)).  However, this exception is not applicable here because the Plaintiffs are attempting to amend her complaint by substituting a more definite fictitious defendant for another fictitious defendant.  This is in

8

clear contrast to the examples where courts allowed plaintiffs to amend their complaints to substitute the actual names of previously identified fictitious defendants.  Because the Plaintiffs are not substituting the actual name of the person who dropped Holmes, the Plaintiffs' amended complaint differs from the examples identified by the Plaintiffs for substituting parties after removal of the case to federal court.  Therefore, it appears that both the Plaintiffs' reasons for amending the complaint are intended to defeat federal jurisdiction.

Because the Plaintiffs' amended complaint runs afoul of both recognized types of amendments acceptable at the post-removal stage, the Plaintiffs' Motion to amend/correct the Complaint, (doc. 14), is due to be DENIED without prejudice.

### B.  Fraudulent Joinder

With the motion to amend the complaint denied, the Court is left to consider the operative complaint alone in determining whether Carrington was fraudulently joined.  The Defendants argue that Carrington was fraudulently joined because Carrington took no part in the incident that resulted in Holmes's fall.  Therefore, her citizenship should not be considered in determining diversity jurisdiction.

To prevail on a  fraudulent joinder claim, the Defendant must show either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."  *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (*Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989)).  Courts have understood *possible* state law claims as meaning "more than such a possibility that a designated

9

residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005). Therefore, a possible state law claim must "be reasonable" and "not merely theoretical." *Id*. (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir.2002)). This determination "must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties*." Legg*, 428 F.3d at 1322 (emphasis removed). Determining whether a party has been fraudulently joined "is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Crowe,* 113 F.3d at 1538. In such a proceeding, the district court must "resolve all questions of fact . . . in favor of the plaintiff." *Cabalceta,* 883 F.2d at 1561.

Because Carrington took no part in the ill-fated transfer of Holmes from his wheelchair, the Defendants argue that there is no possibility that the Plaintiffs can establish a cause of action against Carrington, so she was fraudulently joined. In the first of two affidavits submitted by Carrington, Carrington states that she "did not participate or assist in the attempted transfer of Mr. Holmes" and "did not provide any care to Mr. Holmes from the moment he arrived at the Clinic through [his] attempted transfer." (Doc. 1-3 at 2–3). And her second affidavit reads "when Mr. Holmes arrived at the Clinic and at the time of the event, I was on the other side of Clinic taking care of my patients. I did not personally see Mr. Holmes from the moment he arrived at the Clinic until after the attempted transfer from the wheelchair to the dialysis chair." (Doc. 18-1 at 2). The Plaintiffs concede as much when they state in their motion to remand that they had "mistakenly named . . . Shirley

Bivens Carrington, as that person physically attending Mr. Holmes, along with several other fictitious defendants." (Doc. 15 at 1). The only means by which the Plaintiffs connect Carrington to the scene of the accident is in an affidavit submitted by the son of the Plaintiffs, Steven Holmes, Jr., which states that Carrington was one of the people "present and in the vicinity of my father" and "[a]fter my father's fall, Ms. Carrington immediately went to my father on the floor." (Doc. 14-2 at 1–2). However, the affidavit contained no assertion that Carrington took part in the transfer of Steven Holmes—only that Carrington was "who I understood, together with another nurse, to be the persons in charge at the clinic at the time of my father's fall . . . ." (*Id*.)[3] Although this affidavit puts Carrington at the scene, which is not contested, it does nothing to connect Carrington to the actions that resulted in the Holmes's fall or his subsequent injuries. At the time of removal, the Plaintiffs alleged in their complaint that Carrington "at all times material hereto attended to Steven Holmes," "attempted to get him out of the wheelchair and into the dialysis chair" and "was negligent and wanton, and  . . . allowed Mr. Holmes to fall." (Doc 1-1 at 2).

---

[3] The Carrington's second affidavit reads that her

> duties and responsibilities as a contract nurse on March 1, 2019 were to provide nursing care to patients assigned to me, which did not include Mr. Holmes on that day.  My only supervisory responsibilities were to provide supervisory nursing care over the patient care technicians [ ] or certified clinic hemodialysis technicians [ ] in their administration of care to patients assigned to me, which again did not include Mr. Holmes on March 1, 2109 [sic].  I did not supervise . . . any attempt by them to transfer Mr. Holmes from a wheelchair . . . .

(Doc. 18-1 at 2–3).  She adds, "I was not involved in the decision to call or the actual call to the local fire department to assist in the transfer of Mr. Holmes on March 1, 2019." *Id*.

Based on these pleadings and the Plaintiffs' concession that Carrington did not assist Holmes in moving him to a wheelchair, there is no possible cause of action that can be alleged against Carrington based on these allegations.   Therefore, the Plaintiffs fraudulently joined Carrington, and her citizenship will be disregarded for the purposes of diversity jurisdiction.   Because BMA, a non-resident of Alabama, remains the only defendant, complete diversity exists between the parties.

### C. Amount in controversy requirement

Although complete diversity exists between the Parties, the Defendants still must satisfy the second requirement of federal diversity jurisdiction: that the amount in controversy exceeds $75,000.   While recognizing that the Plaintiffs do not specify the amount in damages they seek, the Defendants argue that it is facially apparent from the complaint that the amount in controversy exceeds $75,000. (Doc. 1 at 4).   The Plaintiffs do not address whether the required amount in controversy exists; however, the Court must do so as a part of its determination of whether subject matter jurisdiction exists.

Because the case was removed within thirty days of being served with the complaint, this case is governed by 28 U.S.C. § 1446(b)(1) (formerly called paragraph one removal).   A defendant may immediately remove a case to federal court within thirty days of receipt of the initial pleadings if it is apparent that complete diversity and the required amount in controversy exist.   § 1446(b)(1).   If a plaintiff does not specify damages in state court, a removing defendant must prove by the preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Sullins v. Moreland*, 2021 WL 54206, at *2 (M.D. Ala. Jan. 6, 2021) (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d

1058, 1061 (11th Cir. 2010)).  The Eleventh Circuit explained, "[w]hen the complaint does not claim a specific amount of damages, removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* (citing *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 754 (11th Cir. 2010)).

If the jurisdictional amount is not facially apparent from the complaint, the court should look to "the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.*  So when a moving defendant actually makes specific factual allegations and can support those allegations, a court may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to aid in its determination whether the required amount in controversy exists. *Id.* (citing *Roe*, 613 F.3d at 1061–62).  Essentially, the court is not required to "suspend reality or shelve common sense" to determine whether the complaint or other documents establish the jurisdictional amount. *Id.* (citing *Pretka*, 608 F.3d at 770).  Rather, courts are to use their "judicial experience and common sense" to evaluate whether the amount in controversy meets the jurisdictional requirement. *Id.* (citing *Roe*, 637 F.Supp.2d at 999).  It is important to keep in mind "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Id.* (citing *Jones v. Novartis Pharm. Co.,* 952 F.Supp.2d 1277, 1283 (N.D. Ala. 2013).  While the court may not speculate to the exact dollar amount, it can conclude, for example, without speculating "from the egregious conduct alleged that the amount, whatever it is, far exceeds $75,000." *Id.* (citing *Pretka*, 608 F.3d at 754).  But if the defendant's evidence is insufficient, the

court may not "speculate in an attempt to make up for the notice's failings." *Id*. (citing *Pretka*, 608 F.3d at 752).

Because the Plaintiffs do not specify the amount of damages sought, the Court is left to consider the complaint and the notice of removal in making its determination of whether the required amount in controversy existed at the time of removal.  Starting with the complaint, the relevant allegations about the nature of Holmes's injuries are that "the conduct of Fresenius . . . was negligent and wanton, and the Defendants allowed Mr. Holmes to fall, causing serious injury to him" when employees of Fresenius attempted to help him out of his wheelchair, and he was taken to the hospital. (Doc. 1-1 at 2).  Further, the complaint alleges that Holmes "sustained back injuries and other injuries.  He has been caused extreme and severe pain and suffering, mental anguish and emotional distress.  He has incurred medical bills and will continue to incur medical bills." (*Id*.).  And the Plaintiffs seek compensatory and punitive damages. (*Id.* at 3).  Turning to the notice of removal, the Defendants argue that the Plaintiffs' seeking punitive damages, combined with the nature of the injuries, is sufficient to show that the required amount in controversy more likely than not exists. (Doc. 1 at 4–5).  To support this, they note the Eleventh Circuit precedent permits courts to consider the possibility of punitive damages in amount in controversy determinations, and the Defendants direct the Court to various jury awards for fall cases over the last twenty years from all over Alabama. (*Id*.)

Although this Court may consider that the Plaintiffs are seeking punitive damages and the nature of the injuries suffered by Holmes, it is far from clear that these discrete data points make the $75,000 amount in controversy facially apparent from the complaint and

the notice of removal.  It is probative that the Plaintiffs seek punitive damages, but there is nothing "talismanic about such a demand that would *per se* satisfy the amount in controversy requirement . . . ." *Lambeth v. Peterbilt Motors Co.*, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012) (emphasis in original).   Further, courts have disfavored considering previous state court jury verdicts in other cases—especially when the other case's factual backgrounds are not identical to the case at hand. *See id*. at *5 ("[w]ho received damages greater than $75,000 [from previous juries] is nothing more than gross speculation, guesswork and wishful thinking, none of which the Court can indulge."); *Arrington v. Wal-Mart Stores, Inc.*,  2014 WL 657398, at *2 (M.D. Ga. Feb. 20, 2014) ("To make any comparison between [p]laintiff's claims and the Lowndes County case for purposes of determining the amount in controversy would be to engage in impermissible speculation, which the Court will not do."); *Alexander v. Captain D's, LLC*, 437 F. Supp. 2d 1320, 1322 (M.D. Ala. 2006) ("Some juries may have awarded damages beyond the jurisdictional limit for similar causes of action, but that does not prove that a jury would award more than $ 75,000 on the particular facts of this case.").   Here, although the jury verdicts are perhaps similar, they are not identical to the cases at hand and also occurred over a roughly twenty-year period in counties all over Alabama. Therefore, the Court does not find the identified jury verdicts to be probative to the amount in controversy in this case.

Therefore, the Court is left to consider whether the allegations in the complaint make it facially apparent that the $75,000 amount in controversy requirement is met.  The short answer is no.  Although it is possible that the fall from the wheelchair that resulted in

back injuries to Holmes could be worth $75,000, the few facts about the injury or the damages that resulted from it make it far from clear that the value of the claims is above the requisite amount in controversy. And as another district court has noted "[b]ack injuries are not *per se* accompanied by an amount in controversy in excess of $75,000." *Lambeth*, 2012 WL 1712692, at *3 (emphasis in original). So the Court has no way of knowing from the complaint at the time of removal and notice of removal where on possible spectrum of recoveries for back injuries the Plaintiffs' case lies. *Id*. To find otherwise would require the court "to speculate in an attempt to make up for the notice's failings," *Pretka*, 608 F.3d at 752, which would be impermissible. Thus, the Defendants have not shown the existence of the amount in controversy requirement for federal diversity jurisdiction, so this Court does not have jurisdiction over the case. Therefore, the Plaintiffs' motion to remand the case to state court is GRANTED.

## V.   CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Plaintiffs' motion to amend/correct complaint, (doc. 14), is DENIED without prejudice.

2. The Defendants' motion for guidance from the court, (doc. 26), and Plaintiffs' motion for entry of a scheduling order, (doc. 27), are DENIED as moot.

3.   The Plaintiffs' motion to remand, (doc. 15), is GRANTED.

DONE this 4th day of June, 2021.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE